ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| LUZ EVELYN MUÑIZ MUÑOZ<br><br>Apelante<br><br>v.<br><br>ABEL DURANT TORO<br><br>Apelado | KLAN202200747 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: ISCI201800340<br><br>Sobre: Liquidación de Sociedad Gananciales |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Rodríguez Flores y la Jueza Martínez Cordero[1].

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Comparece la señora Luz Evelyn Muñiz Muñoz (señora Muñiz o apelante) mediante recurso de Apelación, para solicitarnos la revisión de la *Sentencia* emitida el 28 de junio de 2022, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante TPI). Mediante el dictamen apelado, el foro primario declaró *Ha Lugar* la *Demanda* sobre liquidación de bienes gananciales.[2]

Por los fundamentos que expondremos a continuación, se modifica la *Sentencia* apelada y así modificada se *confirma*.

### I

El 1 de mayo de 2018, la señora Muñiz presentó una *Demanda* sobre liquidación de bienes gananciales contra Abel Durant Toro (señor Durant o apelado).[3] Adujo que las partes de epígrafes contrajeron matrimonio el 16 de octubre de 1994, bajo el régimen de sociedad legal de gananciales. Sostuvo que el 29 de septiembre de 2016, se notificó una sentencia de divorcio por la causal de

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución Hon. Grace Grana Martinez.
[2] Apéndice de la apelante, a las págs. 16-39.
[3] *Id.*, a las págs. 43-49.

Número Identificador

SEN2024_____

ruptura irreparable, la cual disolvió el vínculo matrimonial antes mencionado. Alegó que, al momento de la presentación de la aludida *Demanda*, existía una comunidad de bienes post-divorcio que sobrepasaba los cincuenta mil dólares ($50,000.00) y manifestó que deseaba no continuar en estado de indivisión. Por otro lado, mencionó que, en el pleito de divorcio, le solicitó al TPI la coadministración de una corporación llamada A.D. Comunications Group Inc. (Corporación), el cual era un negocio ganancial. A su vez, recalcó que, en ese pleito de divorcio, el TPI emitió una *Resolución y Orden* el 12 de mayo de 2016 en la cual le ordenó al señor Durant concretar ciertas acciones so pena de desacato, tales como prohibirle enajenar de forma unilateral bienes gananciales, permitirle a la señora Muñiz la coadministración de la Corporación, entre otras directrices.

Así pues, en el caso que nos ocupa, la señora Muñiz planteó en la *Demanda* que el señor Durant incumplió en varias instancias con la referida *Orden* del 12 de mayo de 2016. En tal sentido, la apelante solicitó en el caso de autos, liquidar la comunidad de bienes, lo que antes era la sociedad legal de gananciales, y exigió el cumplimiento por parte del apelado, de las órdenes emitidas en el pleito de divorcio. Por su parte, el 25 de julio de 2018, el señor Durant presentó una *Contestación a Demanda* en la cual negó algunas alegaciones y levantó sus correspondientes defensas afirmativas.[4]

Conforme surge de los autos originales del caso, transcurrido un tiempo desde que la apelante interpuso su *Demanda*, el 24 de julio de 2019, esta presentó una *Moción en Solicitud de Permiso para Enmendar Demanda*. En dicho escrito, le solicitó al TPI permiso para incluir tres (3) corporaciones, algunas creadas durante el

---

[4] *Id.*, a las págs. 40-42.

matrimonio y otras con posterioridad al divorcio, por el señor Durant. Ese mismo día, el TPI emitió una *Resolución y Orden* en la cual, entre otros asuntos, le concedió un término de diez (10) días a la señora Muñiz para que enmendara su *Demanda*. No obstante, de un examen del expediente y conforme expresó posteriormente el TPI en la *Sentencia* apelada, la señora Muñoz no enmendó su *Demanda* para los propósitos que solicitó.

Transcurrido varios tramites procesales los cuales no son necesarios pormenorizar, el 24 de febrero de 2021, las partes de epígrafe presentaron el *Informe Preliminar de Abogados Enmendado.*[5] Mediante este, las partes plantearon sus respectivas versiones de los hechos; presentaron estipulaciones de hechos, documentos y asuntos sobre los cuales no había controversia y aquellos en los que sí existía controversia; informaron la prueba documental estipulada, la prueba documental que las partes estarían ofreciendo en el juicio y la lista de testigos y peritos de cada parte entre otros tantos asuntos.

Así las cosas, el 10 de mayo de 2022, se celebró el juicio en su fondo.[6] Posteriormente, el 28 de junio de 2022, el foro primario emitió la *Sentencia* apelada.[7] En esencia, el foro primario determinó cuáles serían las respectivas participaciones de las partes en la comunidad de bienes post-ganancial y especificó cómo se pagarían. Por otra parte, producto de la vista, el TPI emitió veintiséis (26) determinaciones de hechos en su *Sentencia* las cuales transcribimos *in extenso*:

1. Las partes constituyeron una Sociedad Legal de Gananciales desde el 16 de octubre de 1994, fecha en que contrajeron matrimonio hasta el día en que advino final y firme la Sentencia de divorcio.

---

[5] Apéndice del Alegato suplementario de la apelante, a las págs. 1-65.
[6] Apéndice de la apelante, a la pág. 18.
[7] *Id.*, a las págs. 16-39.

2. La demanda de divorcio se radicó, por la aquí demandante, el 2 de mayo de 2016[,] en conjunto con una solicitud de coadministración.

3. El Tribunal de Relaciones de Familia declaró Con Lugar dicha solicitud de coadministración mediante Resolución y Orden emitida el 12 de mayo de 2016.

4. La Sra. Luz Evelyn Muñiz Muñoz y Sr. Abel Durant Toro eran empleados de la compañía AD Communication a la fecha del divorcio de las partes.

5. Que AD Communications Inc fue creada durante el matrimonio del Sr. Abel Durant Toro y la Sra. Luz Evelyn Muñiz Muñoz.

6. Que la compañía AD Communications Inc pagaba el seguro social de la Sra. Luz Evelyn Muñiz Muñoz y del Sr. Abel Durant Toro.

7. Que el sueldo de la demandante en el año 2016 fue pagado por AD Communications Inc. y ascendió a $26,000.00 para un sueldo mensual de $2,166.66 mensuales.

8. Que la corporación AD Communications Inc. cesó de operar y rendir sus funciones desde diciembre de 2016.

9. Que[,] durante el matrimonio entre el demandado y la demandante, se adquirieron bienes muebles e inmuebles sujetos a división. Que ambas partes están de acuerdo en que el Tribunal proceda a determinar la división y liquidación de las participaciones que le correspondan a cada parte en relación a la extinta Sociedad Legal de Gananciales.

10. Que la demandante reside junto a sus dos hijas [en] una de las propiedades de la extinta Sociedad Legal de Gananciales, ubicada en Km. 13.3 Sector Los Martínez de Cabo Rojo, por haberse determinado por el Tribunal en el caso de divorcio que la propiedad era hogar seguro de las menores hijas del matrimonio. A esta fecha las hijas son mayores de edad.

11. Que el Sr. Abel Durant reside en una de las propiedades de la Extinta Sociedad Legal de Gananciales, ubicada en la Urb. Elizabeth C-I, de Cabo Rojo, la cual est[á] salda desde antes de la fecha de la radicación del divorcio.

12. Que las partes en común acuerdo sometieron las cuatro propiedades inmuebles pertenecientes a la extinta Sociedad Legal de Gananciales para tasación y las mismas fueron tasadas.

13. Que el demandado[,] el 28 de julio 2016[,] incorporó una empresa de nombre AVAD Communications Inc.

14. Que se estipula que AD Communications Inc y AVAD Communications Inc fueron fusionadas para 18 de octubre de 2016, para formar una sola corporación, por lo que los ingresos provenientes de la corporación AVAD Communications Inc debían ser los mismos ingresos adjudicados a la corporación AD Communications Inc.

15. El Tribunal de Primera Instancia, Sala Superior de Mayagüez[,] dictó Sentencia de divorcio declarando roto y disuelto el vínculo matrimonial el 29 de septiembre de 2016.

16. Que el demandado después de haberse divorciado (29 de septiembre de 2016) registró una corporación de nombre VALAD Communications Inc Inc., el 7 de enero de 2017.

17. Que se estipulan como parte del caudal los cuatro (4) inmuebles y los valores establecidos por tasación:

    (a) Solar de 1,056.46 mc que contiene edificio en la PR-3311, km. 0.1, Sector Los Matos, Bo. Guanajibo, Cabo Rojo, PR[,] el cual no tiene deuda. Esta propiedad fue tasada por acuerdo de las partes y el valor establecido fue de ***$71,000.00***.

    (b) Solar de 1,059.3670 mc en la PR-3311, km.0.1, Sector Los Matos, LOB-3, Bo. Guanajibo, Cabo Rojo, PR[,] el cual no tiene deuda. Esta propiedad fue tasada por acuerdo de las partes y el valor establecido fue de ***$37,000.00***.

    (c) Solar de 400.41 mc con estructura residencial localizado en la Urb. Elizabeth, C-I Calle Romanos, Cabo Rojo, el cual no tiene deuda. Esta propiedad fue tasada por acuerdo de las partes y el valor establecido fue de ***$100,000.00***.

    (d) Solar de 5,399.30 mc con estructura residencial localizada en el Km.13.3, sector Los Martínez, Cabo Rojo, PR. Esta propiedad tiene una deuda hipotecaria. Esta propiedad fue tasada por acuerdo de las partes y el valor establecido fue de ***$290,000.00***[.]

18. Que se estipulan como parte del caudal los once (11) vehículos y sus valores:

    (a) Truck Ford 350, año 2003, tablilla 724-964, a nombre del demandado. Valor $2,500.00.
    (b) Truck Ford 450, año 2000, tablilla H35-759, a nombre del demandado. Valor $1,700.00.
    (c) Ford Transit, año 2011, tablilla 898-372, a nombre del demandado. Valor $3,000.00.

(d) Lancha Pursuit de 25 pies con carretón continental, año 2013, tablilla 132841. El demandado tiene la posesión. Valor $15,000.00.

(e) Montero Dakar, Mitsubishi, año 2001, tablilla EBY-294, a nombre de la demandante. Valor $500.00.

(f) Motor Home, Chevrolet, año 1996, tablilla H44-027. La demandante tiene la posesión. Valor $5,500.00.

(g) Nissan, Pathfinder, año 2013, tablilla ICE-152, a nombre de la demandante. Valor $9,430.00.

(h) Jeep Compass, año 2014, tablilla IGS-053, a nombre del demandado. La posesión la tiene la hija. No se valoró ya que se le dejó a su hija.

(i) Jeep Wrangler, año 2014, tablilla IHP-844, a nombre del demandado. La posesión la tiene la hija. No se valoró ya que se le dejó a su hija.

(j) Ford Van, año 2000, tablilla 663-569, es chatarra no tiene uso. No se valoró por ser chatarra.

(k) Grand Marquis, año 2004, tablilla FXA-386, es chatarra no tiene uso. No se valoró por ser chatarra.

19. Que se estipulan como parte del caudal las siguientes cuentas de banco y sus balances a la fecha del divorcio:

(a) Cooperativa de Ahorro y Crédito de Cabo Rojo, a nombre de la demandante:

1. Cta. núm. 14774 (cheques)
Balance al divorcio: _____ $39,913.00

2. Cta. núm. 14774 (acciones)
Balance al divorcio: _____$18,014.57

3. Cta. núm. 14774 (ahorros)
Balance al divorcio: _____$8,978.36

(b) Cooperativa de Ahorro y Crédito de Cabo Rojo, a nombre del demandado:

1. Cta. núm. 10936 (acciones)
Balance al divorcio: _____$1,710.07

2. Cta. núm. 10936 (ahorros)
Balance al divorcio: _____ $15,699.84

(c) Oriental Bank:

1. Cta. núm. NEE09350, IRA a nombre de la demandante
Balance al divorcio: _____ $5,390.16

2. Cta. núm. 4806782481 (ahorros) a nombre de la demandante y su hija
Balance al divorcio: _____$423.07

3. Cta. núm. 4863720033 (ahorro) a nombre del demandado y su hija
Balance al divorcio: _____$306.62

(d) Banco Popular, a nombre de la demandante:

1. Cta. núm. 6714578 IRA Regular
   Balance al divorcio: _____$59,516.60

2. Cta.núm.206-053116(cheques)
   Balance al divorcio: _____ $7,191.23

3. Cta. núm. 783-276605(ahorros)
   Balance al divorcio: _____ $34.64

(e) Banco Popular, a nombre del demandado:

1. Cta. IRA Regular:
   Balance al divorcio: _____ $12,041.55

(f) BCU, a nombre de la demandante:

1. Cta. núm. 2037693 (ahorros)
   Balance al divorcio: _____ $5.00

2. Cta. núm. 2037693 *Rain Days Savings*
   Balance al divorcio: _____ $10,696.44

3. Cta. núm. 2037693 (cheques)
   Balance al divorcio: _____ $1,000.00

(g) BCU, a nombre del demandado:

1. Cta. núm. 1793131 (ahorros)
   Balance al divorcio _____ $10,332.17

2. Cta. núm. 179131 (cheques)
   Balance al divorcio: _____ $11,405.45

20. Que se estipulan como bienes del caudal el mobiliario de la residencia donde vive la demandante, valorado en $5,000.00 y el mobiliario de la residencia del demandado valorado en $1,000.00.

21. Que se estipulan como parte del caudal las siguientes deudas y sus balances a la fecha del divorcio:

(a)  Hipoteca con el Banco Popular núm. 700891393

Al divorcio la deuda era: _____$142,496.41
Al 31 de enero de 2021 la deuda es
de: _____ $83,285.48

(b)  De la Nissan Pathfinder (2013) con el BCU:

Al divorcio se debía: _____$10,696.44

(c) Del Jeep Wrangler (2014) con el BCU:

Al divorcio se debía: _____$15,681.90

Sobre estos vehículos ya no se adeuda pago alguno ya que la Nissan Pathfinder fue pagada por el demandado y el Jeep Wrangler fue pagado por la demandante. Ambas partidas fueron pagadas posterior al divorcio.

(d) Tarjeta American Express_____$9,343.68

(e) Tarjeta FirstBank _____$7,981.41

Sobre estas últimas dos tarjetas estas ya no se adeuda pago alguno ya que el demandado las pagó.

22. Que el demandado, estando todavía casado con la demandante, se le impuso el 14 de julio de 2016 una pensión provisional por la cantidad de $1,972.00 que incluía la pensión básica y los reclamos de vivienda. Que el 14 de febrero de 2017 se estipuló una pensión final de $1,650.00 mensuales más el pago completo de la mensualidad hipotecaria ($1,498.00). Ya para esta fecha las partes estaban divorciadas desde el 29 de septiembre de 2016.

23. Que el demandado fue relevado de la pensión el 8 de abril de 2019.

24. Que la demandante retiró de la cuenta de ahorros número 14779 de la Cooperativa de Ahorro y Crédito de Cabo Rojo, las siguientes cantidades en las siguientes fechas:

(a) 7 de abril de 2016 _____ $15,000.00
(b) 13 de abril de 2016 _____ $35,000.00
(c) 19 de abril de 2016 _____ $25,000.00
(d) 27 de abril de 2016 _____ $15,000.00

25. Estos retiros realizados aproximadamente 30 días antes de la radicación del divorcio, fueron en efectivo, no se depositaron en ninguna cuenta bancaria y no se le notificó al demandado de dichos retiros.

26. La parte demandante no produjo evidencia documental alguna relacionada al uso o destino de dichos fondos retirados.[8]

Producto de las determinaciones de hechos y las conclusiones de derecho que surgen de la referida *Sentencia*, el foro primario concluyó lo siguiente:

La participación de la Sra. Luz Evelyn Muñiz Muñoz, parte demandante, totaliza la cantidad de $361,832.64. La participación del Sr. Abel Durant Toro, totaliza la cantidad de $389,170.44. Ambas participaciones serán

---

[8] Apéndice de la apelante, a las págs. 19-24.

pagader[a]s de la forma y manera establecidas en esta *Sentencia.*

Esta Sentencia será utilizada igualmente como ORDEN para que los bancos, cooperativas e instituciones bancarias realicen los pagos en concordancia con la forma y manera que aquí se dictamina incluyendo el pago de la hipoteca.

Se les apercibe a las partes que no podrán retirar dinero alguno de las cuentas incluidas en esta Sentencia desde la notificación de esta Sentencia que no sea cónsono con lo aquí dictaminado. El incumplimiento de lo aquí señalado podrá conllevar un desacato.

Se establece que[,] si alguna de las cuentas aquí determinadas no reflejara la cantidad incluida en esta Sentencia al momento de retirarse los dineros para pagar la participación de cada parte por razón de que la parte con control de estas haya retirado dicho dinero con anterioridad a la firma de esta Sentencia, entonces surgirá una causa de acción a favor de la parte que no reciba su participación tal y como se establece en este dictamen.

Las costas, gastos y honorarios en relación a la actividad notarial de los bienes inmuebles entre las partes para realizar los cambios pertinentes ante el Registro de la Propiedad, a base de lo establecido en la Sentencia, se hará por partes iguales, o sea, cada parte aportará el 50%.

Esta Sentencia se emite con la imposición de honorarios por temeridad contra la parte demandante en la cantidad de $4,000.00 a favor de la parte demandada.[9]

Inconforme, el 13 de julio de 2022, la apelante presentó una *Moción Solicitando Determinaciones de Hechos y de Derecho y Moción de Reconsideración.*[10] En su escrito, la señora Muñiz esbozó que el TPI se equivocó en cuanto a su apreciación de la prueba en el juicio y que por ello debía realizar determinaciones de hechos adicionales los cuales servirían para reconsiderar la *Sentencia* según emitida. Por su parte, el 9 de agosto de 2022, el apelado presentó *Moción en Cumplimiento de Orden.*[11] En esta, adujo que presentó dicho escrito en cumplimiento con una orden previa del TPI, en el cual el foro primario le solicitó que respondiera a la moción de reconsideración

---

[9]*Id.*, a las págs. 38-39.
[10]*Id.*, a las págs. 8-15.
[11]*Id.*, a las págs. 2-7.

de la apelada. Así pues, el señor Durant realizó sus planteamientos en cuanto al por qué el TPI no debía reconsiderar su *Sentencia*. Posteriormente, mediante *Orden* emitida el 16 de agosto de 2022, el foro primario declaró No Ha Lugar la moción de reconsideración presentada por la apelante.

En desacuerdo aún, el 21 de septiembre de 2022, la apelante presentó un recurso de *Apelación*, mediante el cual esgrimió la comisión de tres (3) errores por el foro primario, a saber:

> PRIMER ERROR: Erró el Tribunal de Primera Instancia en la apreciación de la prueba, al emitir determinaciones de hechos que no van acorde con la prueba testifical ni documental desfilada; y basar sus conclusiones en hechos particulares y no en la totalidad de la prueba, por lo que cometió error manifiesto al aquilatar la prueba.

> SEGUNDO ERROR: Erró el Tribunal de Primera Instancia, en la aplicación del derecho respecto a los créditos concedidos al demandado, como parte de los pagos emitidos por la demandante a la hipoteca ganancial.

> TERCER ERROR: Erró el Tribunal de Primera Instancia, en la aplicación del derecho en relación a no permitir pasar prueba sobre los alegatos de la demandante, en relación a la corporación cuya co-administración había sido ordenada por el Tribunal, para poder establecer que se desviaron dineros pertenecientes a la comunidad post-ganancial sujeta a división, y que dichos ingresos no fueran considerados como parte del inventario.

Luego de que la parte apelante presentara la transcripción de la prueba oral (en adelante, TPO) y de que la parte apelada no presentara objeción alguna sobre la misma, dimos por estipulada dicha transcripción. De igual manera, el 4 de abril de 2023, la apelante presentó su alegato suplementario. Finalmente, el 6 de junio de 2023, el apelado compareció con su *Alegato en Oposición*

Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

**II**

**A. Recurso de Apelación**

La Regla 52.2 (a) de las Reglas de Procedimiento Civil,[12] dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[13] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[14] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. [15]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[16] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la

---

[12] 32 LPRA Ap. V, R. 52.2 (a).
[13] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[14] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[15] 4 LPRA Ap. XXII-B, R. 13 (A).
[16] 32 LPRA Ap. V, R. 47.

moción.[17] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

### B. Sociedad Legal de Gananciales y Comunidad de Bienes Post-Ganancial

En nuestro ordenamiento jurídico la Sociedad Legal de Gananciales (en adelante, SLG) es el régimen económico que habitualmente regula la institución del matrimonio en nuestro país.[18] La SLG comienza el mismo día que se realiza el matrimonio.[19] Luego de contraído el matrimonio bajo este régimen, la gestión económica que realiza cada cónyuge se hace en beneficio de la sociedad y no para beneficio individual.[20]

En la SLG, los cónyuges figuran como codueños y administradores de todo el patrimonio matrimonial sin adscribírsele cuotas específicas a cada uno.[21] Además, la SLG es una entidad con personalidad jurídica propia, por lo que es distinta y separada de los dos (2) miembros que la componen.[22] A la luz de lo anterior, esta no absorbe la personalidad individual de los cónyuges que la integran.[23] A raíz de ello, la SLG es una entidad económica familiar *sui generis* que no tiene el mismo grado de personalidad jurídica que las sociedades ordinarias o entidades corporativas.[24]

El Código Civil de Puerto Rico (en adelante, Código Civil) menciona cuales son los bienes que se consideran gananciales:

> (1) Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.
>
> (2) Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.

---

[17] *Id.*
[18] *Torres Zayas v. Montano Gómez*, 199 DPR 458, 465 (2017); *SLG Báez-Casanova v. Fernández*, 193 DPR 192, 211 (2015); *Montalván v. Rodríguez*, 161 DPR 411, 420 (2004).
[19] *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 978 (2010).
[20] *Id.*
[21] *Id.*; *Roselló Puig v. Rodríguez Cruz*, 183 DPR 81, 93 (2011).
[22] *Pauneto v. Núñez*, 115 DPR 591, 594 (1984).
[23] *Id.*; *Pagán Rodríguez v. Registradora*, 177 DPR 522, 542 (2009).
[24] *Muñiz Noriega v. Muñoz Bonet, supra.*

> (3) Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges.[25]

No obstante, la naturaleza ganancial de los bienes adquiridos durante el matrimonio, al igual que la de las deudas es controvertible.[26] Para esto, la parte que alegue el carácter privativo tendrá el peso de la prueba para derrotar esta presunción de ganancialidad.[27]

Con ello en mente, debemos hacer mención sobre el Código Civil, el cual lee:

> Serán a cargo de la sociedad de gananciales:
>
> (1) Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges.
>
> (2) Los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.
>
> [...]
>
> (5) El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.
>
> (6) Los préstamos personales en que incurra cualquiera de los cónyuges. [28]

Por su parte, las deudas contraídas por alguno de los cónyuges desde la fecha de presentación de la demanda de divorcio hasta la fecha en que la sentencia dictada en el caso se convierte en firme, son responsabilidad exclusiva del cónyuge que las contraiga, salvo que cuente con la autorización expresa del tribunal.[29]

Aunque la disolución del matrimonio acarrea la terminación del régimen de la SLG, la liquidación del capital común de los excónyuges no siempre ocurre simultáneamente a esta

---

[25] 31 LPRA § 3641, Art. 1301. El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.
[26] *Muñiz Noriega v. Muñoz Bonet, supra*, 980-981.
[27] *Id.*
[28] 31 LPRA § 3661. Art. 1308.
[29] *Muñiz Noriega v. Muñoz Bonet, supra*, 982.

disolución.[30] Al concluir la SLG, se forma con los bienes existentes hasta ese momento una comunidad ordinaria. En ese momento sobreviene un período en el que se mezclan y confunden provisionalmente los bienes de los excónyuges, hasta que se liquida finalmente la comunidad de bienes post ganancial que se crea entre ellos una vez se disuelve el matrimonio.[31] Sus comuneros, en este caso los excónyuges, ostentan una cuota abstracta sobre la masa ganancial, y no una cuota concreta sobre cada uno de los bienes.[32] Presentada la demanda para liquidar y dividir la SLG se procederá a la formación de un inventario, el cual comprenderá numéricamente, para colacionar las cantidades que, habiendo sido pagadas por la SLG, deban rebajarse del capital de cada uno de los excónyuges.[33]

### C. Pensión Alimentaria a Menores de Edad

En Puerto Rico, los menores de edad tienen un derecho fundamental a recibir alimentos el cual emana de la cláusula constitucional del derecho a la vida consagrado la Carta de Derechos de la Constitución de Puerto Rico.[34] Es por ello que este tipo de casos está revestido del más alto interés público, siendo así el interés principal, el mejor el bienestar del menor.[35]

A tono con lo anterior, el Código Civil de Puerto Rico de 1930 definía el concepto de alimentos como "todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia".[36] En ese sentido, nuestro ordenamiento jurídico dispone que la obligación de alimentar al menor de edad es inherente a la maternidad y paternidad, y por lo cual la obligación recae en estos desde el momento en que la relación

---

[30] *Id.*
[31] *Id.*, 982-983.
[32] *Id.*, 983.
[33] *Id.*, 983-984.
[34] *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022).
[35] *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012),
[36] 31 LPRA § 561. Art. 142.

filial queda establecida legalmente.[37]Asimismo la cuantía de los alimentos será proporcional a los recursos del que los da y a las necesidades del que los recibe.[38] Del mismo modo se reducirán o aumentarán en proporción a los recursos del alimentante y a las necesidades del alimentista.[39]

Es preciso destacar que, pese a que los progenitores estuviesen divorciados, esta obligación es personal de cada uno de los excónyuges, por tal motivo debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor una vez decretado el divorcio. *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019) La doctrina jurídica ha establecido que, las determinaciones de alimentos y de custodia de menores de edad no constituyen propiamente cosa juzgada, ya que están sujetas a revisión judicial, en el TPI, si ocurre un cambio en las circunstancias que así lo justifique, siempre, claro está, tomando en consideración los mejores intereses y el bienestar de los menores.[40]

### D. Estipulaciones

Las admisiones judiciales son las que hace una parte en el transcurso de un proceso civil al contestar una demanda o estipular unos hechos, por lo que éstas no son controvertibles.[41] A raíz de ello, cuando una parte hace una alegación o acepta una estipulación, queda obligada por la alegación salvo que el tribunal le permita retirarla.[42] A la luz de lo anterior, las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas.[43] No obstante, deben de interpretarse liberalmente y de forma compatible con la intención de las partes

---

[37] *Díaz Rodríguez v. García Neris, supra*, 718.
[38] 31 LPRA § 565. Art. 146.
[39] *Id.*
[40] *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998).
[41] *Díaz Ayala et. als. v. ELA*, 153 DPR 675, 693 (2001).
[42] *Id.*
[43] *Id.*; *Rivera Menéndez v. Action Service*, 185 DPR 431, 439 (2012).

con el propósito de hacer justicia.[44] Sin embargo, de existir duda en cuanto a la intención de las partes, se debe adoptar la contención que sea más favorable para la persona a cuyo favor se hizo la estipulación.[45]

Es decir, la estipulación constituye un acuerdo de las partes que litigan ante un tribunal, sobre algún asunto o incidente del litigio.[46] En esencia, estas son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil.[47] A tales efectos, por medio de las estipulaciones se busca evitar dilaciones, inconvenientes y gastos, es por eso por lo que nuestro Tribunal Supremo de Puerto Rico promueve su uso para lograr justicia rápida y económica.[48] Esto se debe a que, estas son favorecidas en nuestro ordenamiento porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de las controversias jurídicas.[49]

En nuestro ordenamiento jurídico se han reconocido tres (3) clases de estipulaciones.[50] La primera clase trata sobre las admisiones de hechos y tienen el efecto de relevar a la parte del requisito de probarlos.[51] Así, las cosas, una vez un hecho es estipulado, este no puede ser impugnado.[52] Como corolario de lo anterior, la estipulación del hecho, de ordinario, constituye una admisión de su veracidad y obliga tanto a las partes como al tribunal.[53] Por su parte, la segunda clase es la que reconoce derechos y tienen el alcance de una adjudicación.[54] Por otro lado, la tercera clase es aquella que trata sobre materias procesales, donde

---

[44] *Id.*; *Ramos Rivera v. ELA*, 148 DPR 118, 126 (1999).
[45] *Ramos Rivera v. ELA*, *supra*.
[46] *Black's Law Dictionary*, 6ta Ed., West Pub. Co., St. Paul, 1990, pág. 1415.
[47] *Rivera Menéndez v. Action Service*, *supra*.
[48] *Ramos Rivera v. ELA*, *supra*.
[49] *Rivera Menéndez v. Action Service*, *supra*.
[50] *Id.*
[51] *Id.*
[52] *Id.*, 439-440.
[53] *Id.*
[54] *Id.*, 439.

las partes pueden estipular la forma y manera en la que llevarán determinado curso de acción o el que se admita determinada prueba.[55] Cabe señalar que, la estipulación de un hecho, contrario a la estipulación sobre la autenticación de evidencia, implica el relevo de prueba de ese hecho, por tal razón, los tribunales no debemos dar un hecho por estipulado si ello no surge claramente de lo acordado por las partes.[56]

### E. Las Corporaciones en Puerto Rico

La Ley Núm. 164-2009, según enmendada, mejor conocida como la *Ley General de Corporaciones*,[57] es el estatuto que instaura las corporaciones en Puerto Rico. Estas son una ficción jurídica que está facultada para realizar cualquier tipo de gestión lucrativa o sin lucro, siempre y cuando sea lícita.[58] Estas entidades facilitan el desarrollo de las empresas toda vez que poseen personalidad jurídica propia, independiente y distinta a la de sus dueños o miembros quienes por lo general no responderán con su patrimonio por aquellos actos de la corporación sino hasta el monto de su inversión.[59]

De esta manera, nuestro ordenamiento jurídico reconoce la existencia de las corporaciones con fines lucrativos, las cuales se dedican a hacer negocios y se distinguen por repartir las ganancias que generan con sus accionistas.[60] En tal sentido, son esos accionistas quienes se denominan como los propietarios de la corporación con fines lucrativos.[61] Así pues, aquellos que son titulares de las acciones de una corporación, posee entonces una parte alícuota de su capital, un derecho general a participar de sus

---

[55] *Id.*, 440.
[56] *Id.*, 443.
[57] 14 LPRA sec. 3501 *et seq.*
[58] *Rivera Sanfeliz y otros v. Junta de Directores de Firstbank Corporate*, 193 DPR 38, 49 (2015).
[59] *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011) citando a: C.E. Díaz Olivo, *Corporaciones,* San Juan, Publicaciones Puertorriqueñas, 2005, pág. 11.
[60] *Id.*, 215.
[61] *Id.*

ganancias y además, posee un derecho sobre la distribución de sus activos en caso de liquidación. [62]

**F. Apreciación de la Prueba, Deferencia Judicial y Discreción Judicial**

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[63] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[64] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[65] En ese sentido, y como regla general, no debemos intervenir con las determinaciones de hechos formuladas por el foro primario en ausencia de pasión, prejuicio, parcialidad o error manifiesto.[66]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o cuando un análisis integral de la prueba así lo justifique, o cuando haya indicios de pasión, prejuicio, parcialidad o error manifiesto.[67] El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones,

---

[62] *Id.*

[63] *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Trinidad v. Chade*, 153 DPR 280, 289 (2001).

[64] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Pueblo v. Santiago*, 176 DPR 133, 148 (2009); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

[65] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009); *Trinidad v. Chade, supra*, 291.

[66] *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022).

[67] *Pueblo v. Calderón Álvarez*, 140 DPR 627, 644 (1996); *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987); S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[68] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[69]

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[70] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[71]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[72]

Ahora bien, cabe destacar que, el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que realice el TPI estén basadas en prueba pericial o documental, un

---

[68] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).
[69] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002); *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).
[70] *Dávila Nieves v. Meléndez Marín, supra,* 772.
[71] *Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018); *Pueblo v. Irizarry, supra.*
[72] *Santiago Ortiz v. Real Legacy et al., supra*; *Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020); *Pueblo v. Martínez Landrón,* 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra,* 63; *Pueblo v. Viruet Camacho,* 173 DPR 563, 584 (2009); *Pueblo v. Irizarry, supra; Pueblo v. Acevedo Estrada, supra.*

tribunal revisor estará en la misma posición que el tribunal *a quo*.[73] Por tanto, ante dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[74]

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[75] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[76]

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[77] Un tribunal de justicia incurre en un abuso de discreción cuando el juez: (i) no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, los sopesa y calibra livianamente.[78]

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[79] No obstante,

---

[73] *González Hernández v. González Hernández, supra*, 777.
[74] *Id.*
[75] S*ierra v. Tribunal Superior, supra.*
[76] *Pueblo v. Pérez Núñez, supra.*
[77] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013); *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*
[78] *Pueblo v. Rivera Santiago, supra.*
[79] *González Hernández v. González Hernández, supra*, 776.

una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor.[80] A esos efectos, conviene destacar que, la intervención del foro apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes.[81]

**III**

En el caso ante nuestra consideración, la apelante nos plantea que el foro primario erró al formular unas determinaciones de hechos que no iban acorde con la prueba testifical ni documental desfilada en el juicio y al no fundamentar sus conclusiones de hecho en la totalidad de la prueba presentada. Además, esboza que el TPI incidió en aplicar unos créditos concedidos al apelado como parte de unos pagos que este realizó a una hipoteca ganancial. Por último, la apelante sostiene que la primera instancia judicial erró al no permitir desfilar prueba relacionada a una corporación coadministrada por las partes, para así poder establecer que se desviaron fondos pertenecientes a la comunidad de bienes post-ganancial sujetos a división. Veamos.

*-a-*

En primer lugar, es preciso resaltar, que las determinaciones de hechos que le corresponde hacer al TPI en una sentencia, es un ejercicio fundado en su discreción judicial basado en su apreciación de la prueba. Por tal motivo, como foro revisor, a no ser que se encuentre presente los elementos de pasión, prejuicio, parcialidad o error manifiesto, estaremos impedidos de intervenir.

En su *primer* señalamiento de error, la apelante impugna ciertas conclusiones a las que arribó el TPI, ya que, presuntamente, el foro primario erró en su apreciación de la prueba que tuvo ante

---

[80] *Rivera Pérez v. Cruz Corchado, supra.*
[81] *Hernández v. San Lorenzo Const.*, 153 DPR 405, 425 (2001).

sí. Específicamente, en su recurso, la apelante sostiene que el TPI incidió en determinar que la cuantía de noventa mil dólares ($90,000.00) retirada por la apelante no benefició a la comunidad post-ganancial y al determinar que dicho retiro se hizo con la intención de defraudar.[82] Asimismo, impugna la credibilidad que le otorgó el foro primario al testimonio del apelado en torno al asunto de una cuantía de cien mil dólares ($100,000.00) aparentemente retirado de un banco, por el señor Durant y su posterior depósito en una caja fuerte.[83]

Tras haber examinado con detenimiento los documentos que obran en el expediente, así como la TPO y los autos originales, no encontramos los elementos que justifiquen nuestra intervención con las determinaciones de hechos por el TPI. Insistimos en que esta Curia, como foro revisor, únicamente tiene facultad para intervenir con la apreciación de la prueba que ejerce el TPI en caso de que haya mediado error manifiesto, pasión, prejuicio o parcialidad,[84] o, en caso de que la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[85] En ausencia total de cualquiera de las circunstancias que nos permitirían intervenir en la apreciación de la prueba realizada por el foro de instancia, colegimos que el *primer* señalamiento de error no se cometió.

Por otra parte, en su *segundo* señalamiento de error, la apelante cuestiona la concesión de un crédito otorgado al apelado referente a unos pagos que este le realizó a una hipoteca ganancial. Surge de los autos que, en el caso de divorcio de las partes, el cual está identificado con la designación alfanumérica ISRF2016-00483, como parte del proceso para establecer la pensión alimentaria a

---

[82] Apéndice de la apelante, a la pág. 33.
[83] *Id.*, a la pág. 34.
[84] *González Hernández v. González Hernández, supra*; *Ramírez Ferrer v. Conagra Foods PR, supra*; *Pueblo v. Irizarry, supra*; *Pueblo v. Maisonave, supra*.
[85] *Pueblo v. Martínez Landrón, supra*, citando a *Pueblo v.* Maisonave, *supra*, a la pág. 63; *Pueblo v. Viruet Camacho, supra*; *Pueblo v. Irizarry,* supra; *Pueblo v. Acevedo Estrada, supra*.

favor de las dos hijas de las partes, la Examinadora de Pensiones Alimentarias (EPA) emitió una Acta con sus recomendaciones para la consideración del TPI, en cuanto al establecimiento de la pensión alimentaria de las hijas menores de edad del señor Durant y la señora Muñiz.[86] Del Acta se desprende que la EPA **recomendó la estipulación sometida por las partes** en la cual se acordó que el señor Durant pagaría mil seiscientos cincuenta dólares ($1,650.00) mensuales en concepto de pensión alimentaria de manera final. Igualmente, surge del Acta que, "**[c]omo parte de su responsabilidad alimentaria**, el [señor] Durant pagará al Banco Popular de Puerto Rico la hipoteca de la residencia que ocupa la demandante [apelante] junto a las menores, cuyo pago asciende a **$1,500.00 dólares mensuales**".[87]  Sin pormenorizar por juzgarlo innecesario, la EPA también recomendó, como parte de la estipulación sometida por las partes, el pago de otros gastos de pensión alimentaria suplementaria.

Las recomendaciones antes mencionadas fueron recibidas, **aprobadas y adoptadas** por el TPI mediante una *Resolución* emitida el 14 de febrero de 2017.[88] Nótese que, en este caso, la EPA en cumplimiento con su facultad delegada por la *Ley Orgánica de la Administración Para el Sustento De Menores*,[89] recomendó que se acogiera la estipulación que las partes presentaron luego de que se celebrara una vista.[90] En ese sentido, la EPA tras recibir la estipulación de las partes, recomendó que, como parte de la obligación alimentaria del señor Durant hacia sus hijas, debía pagar la hipoteca de la residencia donde habitaban. Así las cosas, y según hemos expuesto, el 14 de febrero de 2017, el foro primario las

---

[86] Apéndice del alegato suplementario de la apelante, pág. 77.
[87] *Id.* (Énfasis en el original)
[88] Apéndice del alegato suplementario de la apelante, pág. 77.
[89] Ley Núm 5 del 30 de diciembre de 1985, 8 LPRA § 501 *et seq.*
[90] 8 LPRA § 513, Art. 14.

**aprobó y adoptó** mediante una *Resolución,* la cual constituye la ley del caso y cuya efectividad fue establecida al 1 de marzo de 2017.

Es preciso traer a colación la doctrina reiterada en nuestro ordenamiento jurídico referente a que "el derecho a alimentos corresponde al menor y lo hace acreedor de aquellos alimentos que satisfagan lo indispensable para su sustento según los medios y la posición social de los obligados".[91] Conforme se desprende de los autos y luego de evaluar minuciosamente el expediente ante nuestra consideración, así como las determinaciones de hechos relacionadas a este asunto, el pago de la hipoteca que realizó el señor Durant como parte de la estipulación reducida a escrito en el *Acta de la Examinadora de Pensiones Alimentarias,* así como de la *Resolución* del TPI del 14 de febrero de 2017, es claro que constituían parte del pago de su responsabilidad alimentaria y por tanto se hizo en beneficio de sus hijas menores de edad y no de la comunidad post-ganancial. Puntualizamos que cuando una parte hace una alegación o acepta una estipulación queda obligada por la alegación, salvo que el tribunal le permita retirarla.[92] Es por todo lo anterior que es forzoso concluir que el TPI cometió el *segundo* señalamiento de error imputado por la apelante.

*-c-*

Por último, nos resta examinar el *tercer* señalamiento de error. En este, la apelante sostiene que el TPI debió haberle permitido presentar prueba en torno a planteamientos relacionados a una corporación cuya coadministración había sido ordenada por el foro primario. La consecuencia de esto fue que no se pudo establecer el reclamo de créditos y de ingresos dejados de reportar por el apelado. Conforme surge de la TPO, el foro primario fue enfático al tipo de

---

[91] *Díaz Rodríguez v. García Neris, supra,* 724.
[92] *Díaz Ayala et. als. v. ELA, supra,* 693.

prueba que se iba permitir en cuanto a la Corporación.[93] Así pues, el TPI únicamente permitió preguntas dirigidas a aquellas aportaciones que hizo la Sociedad Legal de Gananciales a la Corporación, más no permitió aquella evidencia relacionada a los ingresos de la Corporación.[94] De igual manera, expresó que los negocios de la Corporación tales como el depósito en una cuenta de banco corporativa eran eventos que no se tomarían en consideración.[95] El fundamento de esto responde a que esta Corporación, al ser una persona jurídica se considera como un tercero que debió haber sido traído al pleito. De hecho, conforme surge de la propia sentencia apelada y de los autos originales, el foro primario le concedió oportunidad a la apelante, para que enmendara su *Demanda* e incluyera a las corporaciones, incluyendo aquella a la que se ordenó la coadministración, pero la apelante optó por no realizar gestión alguna a esos efectos.[96] Por tal motivo, el foro primario no incidió al no tomar en consideración la situación de los ingresos de la Corporación toda vez esta no se trajo al pleito y por consiguiente el *tercer* señalamiento de error no se cometió.

En resumen, atendidos los errores esgrimidos por la apelante y luego de examinar la totalidad del expediente ante nuestra consideración, incluyendo las posiciones de las partes y la TPO, colegimos que corresponde modificar la sentencia apelada a los únicos efectos de revocar la determinación de la concesión del crédito al apelado por concepto del pago de hipoteca que realizó a partir de 1 de marzo de 2017 -y *hasta que fue relevado del pago de pensión alimentaria*-, a la luz de las incidencias procesales del alfanumérico ISRF2016-00483, emitida el 14 de febrero de 2017. Así modificada, confirmamos.

---

[93] Véase la TPO a la pág. 34, líneas 5-13.
[94] *Id.,* a la pág. 125, líneas 6-23; pág. 126, línea 1-2.
[95] *Id.,* a la pág. 140, líneas 13-23; pág. 141, líneas 1-15.
[96] Apéndice de la apelante, a la pág. 33.

## IV

Por los fundamentos que anteceden, se *modifica* la *Sentencia* apelada según la discusión que antecede y así modificada se *confirma.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Rodríguez Flores concurre sin escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones